# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA SIVAK, an individual,<br><br>　　　　　　　　　　Plaintiff,<br>vs.<br><br>TOM VERSEN; BLUE SKY PRODUCTIONS, LLC; and DOES 1 through 10, inclusive,<br><br>　　　　　　　　　　Defendants. | CASE NO. 06cv0416-LAB (WMc)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Dkt No. 19] |

This action alleging copyright infringement, unfair competition, and pendant state law claims is before the court on defendants' Motion For Summary Judgment ("Motion"). Pursuant to Civil Local Rule 7.1(d)(1), the court finds the issues appropriate for decision on the papers and without oral argument. For the reasons discussed below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.　BACKGROUND

Plaintiff Cynthia Sivak ("Sivak") represents she has been employed in the music, radio, and entertainment fields for over 25 years. She alleges she moved from New York to San Diego in November 2002 to join defendant Tom Versen ("Versen") in his business, defendant Blue Sky Productions, Inc. ("Blue Sky") (collectively "Defendants"). Blue Sky is an audio production company in the business of producing audio programs since the early 1990's. Versen and Sivak met while both

were working at Sirius Satellite Radio ("Sirius") in New York from approximately August 1999 to summer 2002, and had developed a personal relationship beginning in about June 2000. Sivak describes her services to Blue Sky as music programmer, talent booker, creative producer, interviewer, music industry liaison, researcher, and publicist. She worked with Versen in particular on programs to enable Blue Sky to enter the gospel market through syndicated gospel-themed programs, culminating in Blue Sky's weekly radio program and short-form segments with artist BeBe Winans. Sivak wrote for the Winans show and participated in the development of or "co-created" elements of two other Blue Sky programs with different artists. Versen and Sivak lived together in an apartment in San Diego until the couple broke up in July 2005, although Sivak continued to provide services to Blue Sky until January 2006.

In February 2006, Sivak filed her Complaint arising from her allegations Versen had promised her equity in Blue Sky, and she relocated to San Diego and worked for the company with that understanding. She alleges she worked without pay until November 2004, after the Winans shows had been on the air for several months, at which time she asked to be paid because she had not received her anticipated equity interest in the company. Versen offered her $10,000, characterized as four month's pay for services rendered, plus a rate of $2,500 per month going forward, but allegedly conditioned payment on her relinquishing any equity interest claim in Blue Sky and her accepting instead some form of "participation" in the shows she worked on. She accepted the offer. She alleges she approached Versen in May 2005 about receiving her promised "participation" in the shows and was told she would share in the proceeds when those were received. She continued to work for Blue Sky with that understanding. In August 2005, Blue Sky increased Sivak's monthly rate to $3,333. Sivak continued to work for Blue Sky, but by January 2006, she concluded she would never receive the ownership interest in Blue Sky or the "participation" Versen promised her, and she stopped working for the company.

Sivak contends Blue Sky paid her "a grand total of $50,416.64 for two and one-half years of work, or roughly 16% of what she could have earned in the marketplace, based upon her salary at Sirius," and her "expectation that the difference would be made up through equity in Blue Sky, or a participation in the shows that she created and worked on, or deferred payments equal to her salary

while working at Sirius" never materialized. Opp. 8:9-16; Sivak Decl. ¶ 22. She alleges "because Blue Sky never agreed in writing to either of these forms of compensation, Sivak never agreed in writing to assign the copyrights in her show scripts or her interviews to Blue Sky." Opp. 8:14-16; Sivak Decl. ¶ 22. She contends she has enforceable copyright interests on the work she did for Blue Sky Defendants are allegedly infringing, and they breached their oral contract(s) with her.

Sivak alleges ten causes of action. First, federal copyright infringement pursuant to 17 U.S.C. §§ 106, 501. Second, a judicial declaration that she is the co-creator, author, and owner of the worldwide copyright in two specific programs and associated interviews, including the right to herself create new episodes of those programs or other works derived from them. Third, Lanham Act § 43(a) unfair competition. Fourth, unfair competition under CAL. BUS. & PROF. CODE § 17200. Fifth, breach of oral contract. Sixth, promissory estoppel. Seventh, fraud. Eighth, negligent misrepresentation. Ninth, unjust enrichment. Tenth, an accounting.

## II.    DISCUSSION

### A.    Legal Standards

Summary judgment is properly entered if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, demonstrate there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. ("Rule") 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the moving party shows an absence of evidence to support the non-moving party's claims, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 256(1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1305-1306 (9th Cir. 1982).

To successfully rebut a properly supported summary judgment motion, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inference made in the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]." Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000), *citing* Rule 56, Celotex, 477 U.S. at 323, and Anderson, 477 U.S. at 249. The nonmoving party must


1  establish, beyond the pleadings, that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324; <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989). "If reasonable minds could differ," the judgment should not be entered in favor of the moving party. <u>Anderson</u>, 477 U.S. at 250-251. However, summary judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." <u>Id.</u> In deciding a summary judgment motion, the court does not make credibility determinations or weigh conflicting evidence, as those are determinations for the trier of fact and inappropriate for summary adjudication proceedings.[1] <u>Anderson</u>, 477 U.S. at 249.

**B.     The Federal Claims**

**1.     Copyright Claims**

Defendants contend Sivak's copyright claims (her First and Second causes of action) must fail as a matter of law because she "was a full-time employee of Blue Sky at the time she rendered the services upon which she bases her copyright complaint," and "all services were within the scope of her employment," so even assuming her work was entitled to copyright protection, it was "'made for hire' within the meaning of 17 U.S.C. § 101," causing all rights to the copyright to "vest[] immediately in Blue Sky upon creation of the works." Mot. 2:3-8. Accordingly, Defendants argue she cannot prevail on a copyright infringement claim or obtain a judicial declaration she owns the copyright in the materials associated with the First claim.[2]

In support of their categorical contention "there is no dispute that Plaintiff's services were rendered as an employee" (Mot. 3:19-20), Defendants rely on an April 1, 2004 application Sivak purportedly completed and submitted to Blue Cross for coverage under Blue Sky's group medical plan. Versen Decl. Ex. A. The form discloses Sivak's Cobra coverage was ending and she sought to be added as a late enrollee to Blue Sky's plan as a full-time Blue Sky employee back to January 2004.

---

[1] Defendants misstate the summary judgment burdens in contending "there are *sufficient* undisputed facts to establish Defendants' right to judgment." Mot. 1:5-6 (emphasis added). The court finds no facts in a summary judgment proceeding, nor does it weigh or count them. Moreover, the Joint Statement of Undisputed Facts recites just three: "1. Defendant Blue Sky Productions ('Blue Sky') is in the business of producing radio shows and other audio programming. 2. Defendant Tom Versen ('Versen') is the founder and Chief Executive Officer of Blue Sky. 3. Versen founded Blue Sky in 1993." Dkt No. 24.

[2] In particular, Sivak alleges those to be: "the BeBe Winans Radio Show" and "Moments of Inspiration with BeBe Winans" and a series of interviews she represents she conducted for use by Blue Sky on the BeBe Winans Radio Show, and certain other programs produced by Blue Sky.

1  Defendants also rely on Versen's declaration that Sivak asked in March 2004 to become a full-time
2  Blue Sky employee in order to be covered by Blue Sky's medical insurance program. Versen Decl. ¶
3  21. Versen declares Sivak handled the necessary paperwork to sign up, herself making the full-time
4  employment representations to Blue Cross, and Blue Sky paid her medical insurance premiums from
5  April 1, 2004 until the end of her employment in 2005. Versen Decl. ¶ 21.

6  Defendants' showing shifted the burden to Sivak to raise a triable issue of material fact with
7  respect to the nature of her employment relationship with Blue Sky. <u>Celotex</u>, 477 U.S. at 324; <u>Taylor</u>,
8  880 F.2d at 1045. There is no dispute that if her scripts and interviews are "works made for hire" (*i.e.*,
9  work prepared by an employee within the scope of employment), the copyright to those works
10 immediately vested in her employer upon their creation, and she cannot prevail on her copyright claims
11 as a matter of law.[3] *See* 17 U.S.C. § 201(b); *see also* <u>Community for Creative Non-Violence v. Reid</u>,
12 490 U.S. 730, 752-53 (1989).

13 The court finds Sivak carried her shifted burden to raise triable issues of material fact regarding
14 whether she worked for Blue Sky as an employee or as an independent contractor, precluding summary
15 adjudication of the copyright-based claims. Although she does not disclaim the signature or
16 authenticity of the medical insurance application, or the fact that she received coverage, she declares
17 she has "no recollection" of filling out the Blue Cross coverage application representing she was a Blue
18 Sky employee.[4] Sivak Decl. ¶ 21. She produces a copy of one check in the amount of $303.00 in
19 support of her sworn statement she reimbursed the company for her "entire" medical insurance
20 premium, "something an employee would not typically do" (Opp. 9:22-24; Sivak Decl. ¶ 21, Exh. B),
21 even though Blue Sky produces evidence in reply that the Exhibit check is the only reimbursement
22 payment she made for the period June 30, 2004 to December 23, 2005. *See* Sisti Decl. Exh. A; Sisti
23 Decl. ¶ 2-3 (stating Sivak's representation is false).
24 ///
25

---

[3] "(b) Works made for hire. In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title . . . [and] owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b).

[4] Defendants' suggestion Sivak may have committed "insurance fraud" is beyond the scope of this action. Reply 3:7-9.

Sivak also declares Blue Sky did not control the manner in which she performed her work, supporting her contention she was an independent contractor. Sivak Decl. ¶ 19. She declares she received IRS form 1099's, as an independent contractor would, rather than W-2's, as an employee would. Id. She argues the reasonable inference that the manner of her work and the treatment of her services for IRS purposes support her characterization, as well as Blue Sky's imputable subjective understanding, that she was an independent contractor. In addition, she provides copies of invoices she submitted to Blue Sky from September 2004 to March 2005 for the monthly payment arrangement she had accepted after working "without any pay for well over a year, something that an employee would not do." Sivak Decl. ¶¶ 10-14, 19; Sivak Decl. Exh. A.

Based on the parties' respective showings, and applying Rule 56 standards, the court **DENIES** the Motion with respect to the copyright claims. Disputed issues of material fact about the nature of Sivak's working relationship with Blue Sky preclude summary adjudication.

### 2. Lanham Act Unfair Competition Claim

Sivak's Third Claim under the Lanham Act § 43(a), 15 U.S.C. § 1125(a), alleges during her time working for Blue Sky, she co-initiated a potential weekly 2-hour radio program with musical artist DJ Tonex ("Club Virtue with DJ Tonex"), co-created many of the Club Virtue elements, worked with Defendants to prepare a presentation video, booked talent for gospel rap interviews on Club Virtue, used her important business relationships with the show's personalities, and the like. Compl. ¶ 31. She further alleges she co-initiated a potential Monday-Friday 5-hour radio program with musical artist Donnie McClurkin, a radio show Blue Sky was only able to develop and launch due to the success Blue Sky enjoyed with the BeBe Winans show she alleges she materially developed and wrote for. Compl. ¶ 32. Her Complaint alleges with specificity various other radio programs and artist connections she contends she was instrumental in bringing to Blue Sky. Compl. ¶ 33-34. She alleges she assisted Defendants in creating press kits and attracting new business, worked on certain promotions for launches, and the like, with the expectation of compensation for that and other work in the form of partnership in Blue Sky. Compl. ¶ 35.

Sivak alleges Defendants omitted to give her appropriate credit as the co-creator and author of certain of the radio programs, as the co-initiator or co-developer of other programs identified in her

Complaint. "[B]y asserting that defendants are the sole creators and owners of those programs, defendants have engaged in **reverse passing off**, which conduct constitutes unfair competition in that it constitutes an attempt to misappropriate or profit from Sivak's talents and workmanship and the result of her creative efforts." Compl. ¶ 36 (emphasis added). She further alleges that conduct has "deprived [her] of the advertising value of her name and of the goodwill that would otherwise stem from the public knowledge that Sivak is the true co-creator of BBRS and AMOI and was the co-initiator and/or co-developer of the other radio programs alleged herein." Id. Sivak summarizes her claim: "The defendants have passed off *The BeBe Winans Radio Show* and *A Moment of Inspiration* as their sole creation when in fact it was substantially created by Sivak, and the defendants should face the appropriate liability for their violation of the Lanham Act," as it "will not conflict with copyright law." Opp. 11:7-11; Opp. 10:16-21 ("Essentially, Sivak alleges that the defendants have 'passed off' *The BeBe Winans Radio Show* and *A Moment of Inspiration* as the sole creations of Blue Sky, when in fact they were co-created by Sivak"), *citing* Compl. pp. 8-11 and ¶ 36; Sivak Decl. ¶¶ 9-13.

Defendants move for summary adjudication of Sivak's Lanham Act claim on grounds: "Plaintiff's Third Claim For Relief is an attempt to recast her invalid copyright claims as unfair competition." Mot. 5:10-11. Defendants further assert Sivak was given credit in all scripts that she wrote for the BeBe Winans Show.[5] Versen Decl. ¶ 18. In addition, they argue: "The United States Supreme Court has established that there is no valid claim for 'reverse passing off' for the failure to accord credit in the creation of intellectual property." Mot. 4:26-27, *citing* Dastar Copr. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 37 (2003).

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" Dastar, 539 U.S. at 28, *quoting* 15 U.S.C. § 1127. A reverse palming off claim requires allegations that: (1) the product at issue originated with the plaintiff; (2) the origin of the product was falsely designated by the defendant; (3) the false designation of origin was likely to cause consumer confusion; and (4) the plaintiff was harmed by the defendant's false designation of origin. Lanham Trade-Mark Act, § 43(a)(1), 15

---

[5] Sufficient disputed facts surrounding the copyright issues and attribution would preclude summary adjudication of the Lanham Act claim, but for the court's determination as a matter of law Sivak's circumstances preclude her pursuing such a claim.

1  U.S.C.A. § 1125(a)(1). The Lanham Act prohibits program producers from misrepresenting someone else's goods or services as their own ("reverse passing off").[6] 15 U.S.C. § 1125(a); Dastar, 539 U.S. at 28 n.1, 31.

Sivak argues Dastar is distinguishable because the holding there was that the owner of an *expired copyright* to a television program could not sue a defendant for "reverse passing off" when the conduct was distribution and sale of a video incorporating portions of the program without attribution after the material had passed into the public domain. In contrast, she alleges "Sivak has *valid copyrights* to her radio scripts, radio programs and other copyrightable material." Opp. 11:5-6 (emphasis added). She contends a finding of Lanham Act liability in her circumstances "will not conflict with copyright law," as was the Dastar Court's concern should it permit a limitation on "the public's federal right to copy and to use expired copyrights." Dastar, 539 U.S. at 34. The actual dispositive question here, assuming (without deciding) Sivak has valid copyrights, is: does the Copyright Act provide her exclusive remedy because all her contributions to Blue Sky's commercial productions fall solely within the category of ideas, concepts, or communications authorship?

The Dastar Court had to construe the Lanham Act § 43(a) term "origin of goods" before reaching its decision:

> If "origin" refers only to the manufacturer or producer of the physical "goods" that are made available to the public (in this case the videotapes), Dastar was the origin. If, however, "origin" includes the creator of the underlying work that Dastar copied, then someone else . . . was the origin of Dastar's product.

Dastar, 539 U.S. at 31.

The Dastar Court concluded: "as used in the Lanham Act, **the phrase 'origin of goods' is in our view incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain**." Dastar, 539 U.S. at 32 (emphasis added). The Court rejected the

---

[6] The Lanham Act also prohibits program producers from "passing off" as someone else's their own goods or services. 15 U.S.C. § 1125(a). With respect to "reverse passing off," the Lanham Act creates liability in a civil action against "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, *or any false designation of origin* . . ." likely to cause "confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person," or "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities. . . ." Lanham Act § 43(a), 15 U.S.C. § 1125(a)(1).

argument that "communicative products," such as books or videos, should be treated differently under passing-off or reverse passing-off analysis than are products purchasers acquire primarily for their physical qualities, on grounds special treatment for communicative products would cause "the Lanham Act to conflict with the law of copyright, which addresses that subject specifically." Id. at 33. Although the Court was examining the issue in the context of alleged misuse of material no longer protected under copyright monopoly because the copyright on the material had expired and the material had entered the public domain, the Court's analysis recognized the need to avoid "'over-extension' of trademark and related protections" into traditional copyright and patent areas. Id. at 34.

> "The Lanham Act," we have said, "does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity." . . . Federal trademark law "has no necessary relation to innovation or discovery." . . . Assuming for the sake of argument that Dastar' representation of itself as the "Producer" of its videos amounted to a representation that it originated the creative work conveyed by the videos, allowing a cause of action under § 43(a) for that representation would create a species of mutant copyright law that limits the public's "federal right to 'copy and to use'" expired copyrights.

Dastar, 539 U.S. at 34 (citations omitted).

This court construes the audio works at issue here as analogous to the videotapes at issue in Dastar, as both may be characterized as "communicative products." The Dastar Court discussed the "practical difficult[ies] of adopting a special definition of 'origin' for communicative products" (Dastar, 539 U.S. at 36) that bears on the availability of a Lanham Act theory of liability in the context of failure to accredit alleged "copyrightable" work, such as Sivak asserts here. The Dastar Court's rule of general application which informs the ruling here is: "'origin of goods' in the Lanham act refer[s] to the producer of the [product], and not the producer of the (potentially) copyrightable or patentable designs that the [product] embodied." Dastar, 539 U.S. at 37. The Dastar Court considered the Act's common-law foundations "were *not* designed to protect originality or creativity," whereas the copyright and patent laws . .. *were*," to conclude as a definitional principle: "the phrase [origin of goods] refers to the producer of the tangible goods that are offered for sale, and not to the author of

1  any idea, concept, or communication embodied in those goods."[7] Id. at 37, *comparing* 17 U.S.C. § 202
2  (distinguishing between a copyrighted work and "any material object in which the work is embodied").
3  "The creative talent of the sort that lay behind the [videos at issue in Dastar] is not left without
4  protection," because the film footage used in the original television series "could have been
5  copyrighted" as was the television series. Id. at 37-38.

6        By extension of those principles, if, as she claims, Sivak has copyrighted interests in the ideas,
7  concepts, or communications embodied in the tangible audio programs Blue Sky produced, her
8  exclusive remedy is under copyright law. See Williams v. UMG Recordings, Inc., 281 F.Supp.2d
9  1177, 1183-84 (C.D.Cal. 2003) (finding Dastar invalidated plaintiff's Lanham Act claim because the
10 "goods" were defendants', not plaintiff's, in the context of a dispute between a film
11 director/writer/editor and, *inter alia*, a recording company for alleged failure to credit him for his
12 contributions to the editing and scoring of a film, applying Dastar's holding that the phrase "origin of
13 goods" in the Lanham Act "refers to the producer of tangible goods that are offered for sale, and not
14 to the author of any idea, concept, or communication embodied in those goods"); *see also* Aagard v.
15 Palomar Builders, Inc., 344 F.Supp.2d 1211 (E.D.Cal. 2004) ("In 2003, the United States Supreme
16 Court ruled that the original creator of communicative products -- 'products that are valued not
17 primarily for [their] physical qualities but for the intellectual content [they convey] such as a book or
18 video' -- could not support a reverse palming off claim under Section 43(a) of the Lanham Act")
19 (*quoting* Dastar, 539 U.S. 23).

20       Sivak relies for her reverse passing off claim on her alleged contribution of ideas, concepts,
21 or creative impetus to Blue Sky's production of radio program products. This court applies the
22 definition "origin of goods" as used in the Lanham Act is limited to tangible products. Accordingly,
23 the court **GRANTS** Defendants' summary adjudication of that claim in their favor as a matter of law.
24 / / /
25 / / /
26 / / /
27

28     [7] The Lanham Act "prohibits actions that deceives consumers and impairs a producer's goodwill," and the "words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers." Dastar, 539 U.S. at 32-33.

### C.   The State Law Claims

####   1.   Unfair Competition

Defendants contend Sivak's CAL BUS. & PROF. CODE § 17200 ("Section 17200") claim seeking injunctive relief "is an attempt to state Plaintiff's first three federal claims as a state unfair competition claim." Mot. 9:12-15. They argue the state law claim is "therefore preempted by the United States Copyright Act, 17 U.S.C. § 301." Id. Sivak does not dispute that when an unfair competition claim under Section 17200 is merely a restatement of a copyright infringement claim, it is preempted by federal copyright law. *See* Litchfield v. Spielberg, 736 F.2d 1352, 1358 (9th Cir. 1984). Instead, she describes her Section 17200 claim as "essentially a restatement of her Lanham Act claim made under California law," citing Complaint ¶¶ 39-42 (incorporating Lanham Act violations), for "reverse passing off," purportedly defeating Defendants' preemption argument. Opp. 13:15-28.

Like her Lanham Act claim, Sivak's allegations of state law unfair competition based on reverse palming off under state law cannot be sustained. In Dastar, the United States Supreme Court "ruled that the original creator of communicative products-- 'products that are valued not primarily for [their] physical qualities but for the intellectual content [they convey] such as a book or video'--could not support a reverse palming off claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because such a claim would conflict with federal copyright law." Aagard, 344 F.Supp.2d at 1218, *quoting* Dastar, 539 U.S. 23.

> Similarly, courts in this Circuit previously held that claims asserted pursuant to California unfair competition laws are "substantially congruent" to claims filed under the Lanham Act. *See* Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir.1994) (noting that the test for both is whether the public is likely to be deceived or confused). . . . **Accordingly, state law claims which rely upon reverse palming off of communicative products also conflict with--and are, therefore, preempted by-- federal copyright law**.

Aagard, 344 F.Supp.2d at 1218 (emphasis added), *citing* Williams, 281 F.Supp.2d at 1183-86.

Sivak's reverse palming off claims under her state law theory in the Fourth Cause of Action, like her Lanham Act claim, are preempted by the Copyright Act. Accordingly, Defendants are entitled to judgment as a matter of law on the Section 17200 claim.

///

## 2. **Breach Of Contract**

Defendants argue Sivak's state law claims "center on her contention that Versen entered into an oral contract with her in which she was promised non-quantified interest in either the ownership of Blue Sky or a non-quantified percentage of profits generated by shows that Blue Sky would develop with her assistance," rendering those "essential elements" of her alleged contract. Mot. 5:18-21; Mot. 9:1-3. They argue dismissal is required because the alleged contract is unenforceable: (1) there was no agreement on essential terms of the alleged contract, relying on quoted portions of Sivak's deposition substantiating no specific percentages or other specific calculation formula were ever agreed, purportedly rendering the promise insufficiently definite to enforce; and (2) as made in consideration of marriage (*see* CAL.CIV.CODE §§ 43.5(d), 43.4).[8] Mot. pp. 5-9; Besser Decl. Exh. A. They argue no legal obligation arises until an essential element reserved for the future agreement of both parties is decided, citing Ablert v. Clauson, 43 Cal.2d 280, 284 (1954) (although the Albert case is distinguishable in that the contract dispute in that case involved an *option agreement* related to future renewal of a lease of real property by a successor in interest to the original lease). The court construes Defendants' argument as challenging the formation or existence of *any* contract between Sivak and Versen, either an initial agreement for an equity interest in Blue Sky or a subsequent modification promising participation in profits.

Sivak argues the entire contract is not made unenforceable even if it included a promise to marry if certain things occurred, because an unlawful element of a contract does not invalidate the lawful elements. Opp. 11:21-25, *citing* CAL.CIV.CODE § 1599. Moreover, she does not attempt to enforce the alleged marriage promise nor damages for breach of that promise. In addition, the potential for marriage after her relocation may reasonably be construed as motivation to accept an offer rather than a term of the promise.

/ / /

---

[8] "In or about October 2002, Versen entered into an oral contract with Sivak whereby Versen promised that if Sivak would move to San Diego and work with him on Blue Sky projects, he would make her a partner in Blue Sky and give her a share in any program she created, co-created, or brought to Blue Sky, **and that he would marry her if she was still in San Diego after six months**, and that as his wife, Sivak would get '50% percent of everything.' Versen orally confirmed the contract on numerous occasions, up through and including occasions in 2005." Compl. ¶ 44 (emphasis added).

Sivak seeks "damages for Versen's breached promise to give Sivak equity in Blue Sky." Opp. 12:4-7. Sivak does not dispute she and Versen "never agreed upon the exact amount of equity that she would earn in return for her services to Blue Sky." Opp. 12:10-12. She characterizes her breach of contract claim as one for promised compensation in the form of future equity to be earned in return for her services to Blue Sky. She relies on CAL. CIV. CODE § 1611 for the proposition uncertainty as to the amount of compensation contemplated in a contract does not render the contract unenforceable.[9]

The court finds disputed issues of material fact surround the contract formation question regarding Sivak's employment with Blue Sky. Moreover, issues must be resolved related to whether the alleged contract she seeks to enforce is for equity in Blue Sky as she contends was the initial promise or for a subsequent participation in profits agreement she arguably accepted. "Where the existence of a contact is at issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed." Bustamante v. Intuit, Inc., 141 Cal.App.4th 199, 208 (2006). The evidence discloses a material factual dispute over the existence of an enforceable oral contract, irrespective of any unenforceable marriage promise component. Defendants do not dispute Sivak's representation she was not paid anything for many months while she performed services for Blue Sky. A reasonable factfinder could infer the parties understood her compensation was to be provided in one of the forms she alleges was promised to her, future equity in the company or participation in the profits from projects to which she contributed. Accordingly, Defendants' motion for summary adjudication in its favor on Sivak's the breach of contract claim is **DENIED**.

### 3. Remaining State Law Claims

Defendants summarily argue Sivak's claims for promissory estoppel, fraud, negligent misrepresentation, unjust enrichment, and an accounting must all be dismissed because each purportedly involves an attempt to enforce, or recover damages for, an unenforceable promise made in consideration of marriage, and, in addition, her promissory estoppel claim, like her breach of

---

[9] "When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained, or when it leaves the amount thereof to the discretion of an interested party, the consideration must be so much money as the object of the contract is reasonably worth." CAL.CIV.CODE § 1611.

contract claim, cannot be sustained because of an allegedly fatal uncertainty with respect to Sivak's allegedly promised compensation. For the same reasons as the court found the breach of contract claim survives summary adjudication, the promissory estoppel challenge also survives an uncertainty of terms challenge at this stage in the proceedings.

The court rejects Defendants' argument all Sivak's state law causes of action must fail on the sole ground she may not recover damages or enforce a promise made in consideration of marriage. The marriage potential need not be construed as a term of the alleged oral agreement(s). Beyond that argument, Defendants do not represent Sivak lacks evidence to support her state claims. Their Motion is accordingly not properly supported, and the burden never shifted to the non-moving party. Anderson, 477 U.S. at 256. Defendants fail entirely to make any showing of entitlement to judgment as a matter of law on any of the remaining state law claims. Accordingly, the Motion is **DENIED** as to the Sixth through Tenth causes of action.

### III.  CONCLUSION AND ORDER

For the foregoing reasons, Defendants' Motion For Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

1. The Motion is **GRANTED** as to the Third and Fourth Causes of Action for unfair competition.

2. The Motion is **DENIED** as to the First, Second, and Fifth through Tenth Causes of Action.

**IT IS SO ORDERED**.

DATED: March 27, 2007

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge